UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDICAL INSTRUMENTS DEVELOPMENT, INC., <br><br> Plaintiff-Counterclaim Defendant, <br><br> v. <br><br> COOK INCORPORATED AND COOK MEDICAL INCORPORATED, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. <br> 09 CV 1409 (JFB) (ETB) |

DECLARATION OF HAROLD JACOB, M.D.
IN OPPOSITION TO MOTION TO MODIFY THE PROTECTIVE ORDER

I, HAROLD JACOB, MD, declare under penalty of perjury as follows:

1. I submit this affidavit in opposition to Cook's request to prevent me from having access to Cook's confidential information. As explained in this affidavit, the information relating to the products that MIDI accuses of infringing does not relate to the products or business of NanoVibronix. I believe that there is no risk of harm to Cook by my having access to Cook's confidential information.

2. I am the only employee of MIDI, and MIDI does not manufacture or sell products. MIDI also is not involved in any research and development of multi-lumen catheters, which are the devices at issue in this case. Similarly, I am not involved in any competitive decision-making or scientific research relating to the subject matter of the patents-in-suit.

3. I am a practicing gastroenterologist and a named inventor of the patents-in-suit. I am also CEO of a company called NanoVibronix. As the name suggests,

NanoVibronix develops and manufactures products that use ultrasound waves to vibrate soft tissue (to alleviate pain) and to vibrate "indwelling" medical devices (to minimize and prevent the buildup of bacteria on these devices). An indwelling device is one that stays in the body for extended periods of time (i.e., days at a time).

4. The technology at issue in this case does not overlap with NanoVibronix's technology. This case involves multi-lumen catheters for use in endoscopic procedures in the biliary tract, under fluoroscopy, known as ERCP procedures. I have performed over one thousand ERCP procedures, and am an expert in the technology at issue in the lawsuit.

5. Cook was well aware of my involvement in NanoVibronix well before this suit was filed in April 2009. In October 2008, the Senior Vice President of Cook met me in Germany in my capacity as CEO of NanoVibronix at a Urology convention, examined NanoVibronix's devices and began discussions regarding potential collaboration. Cook's CEO then instructed Cook's business development personnel to continue discussions with NanoVibronix, which led to an invitation for me to visit Cook's Indiana headquarters. In early November 2008, I met with a room full of Cook executives, and discussed NanoVibronix technology and its potential application to Urological catheters and wound healing. None of this activity was in any way, shape, or form related to the field of GI or the accused devices. At no time were GI devices discussed. I signed a nondisclosure agreement (NDA), under which Cook entrusted me with confidential information relating to its Urology business.

6. Thus, my activity with NanoVibronix was very well known to Cook long before commencement of the lawsuit. In addition, all of the NanoVibronix patents Cook refers to list me as an inventor and were publicaly available long before Cook's counsel

signed the Stipulated Protective Order. However, the NanoVibronix patents do not involve the technology at issue in this case

7. Cook's use of the word "catheters" as a catch-all phrase confuses the facts. The Nanovibronix patents Cook attaches to its motion deal with indwelling urinary catheters, but the accused devices have nothing in common with the technology at issue in those patents. The accused devices are endoscopic surgical devices that are not indwelling and are not subject to infection. Cook notes that at our meeting we discussed infections on catheters, and soft tissue injury, but none of these medical problems is at issue in this lawsuit. Indeed, there is no link between any of the allegedly commercially sensitive information that is at issue in this case and the products or business of NanoVibronix. In fact, in the eight (8) years of Nanvibronix existence, it has not actually sold a product for use with a GI catheter.

8. Similarly, my other involvement with medical companies is unrelated to the issues in this case. Med-Dynamix manufactured urine meters. Med-Dynamix ceased its existence over a year and a half ago, and I have had no involvement with the Med-Dynamix technology for almost two (2) years. Furthermore, the Med-Dynamix urine meters are unrelated to interventional biliary tract endoscopy. Oramed, another company Cook mentions, developed its own proprietary technology for drug delivery in oral medications, specifically insulin, which is unrelated to biliary tract endoscopy. My relationship with Oramed has been public knowledge for more than two years.

9. I am not now nor do I expect to be involved in the design or development of catheters in the foreseeable future. Indeed, I would be willing to agree in writing not to be involved in the design or development of multi-lumen catheters for a period of one (1) year after the conclusion of this litigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 30th day of August, 2010.

_____
Harold Jacob, MD

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DECLARATION OF HAROLD JACOB IN OPPOSITION TO MOTION TO MODIFY THE PROTECTIVE ORDER was served upon counsel for Defendants by ECF filing, this 30th day of August, 2010.

                                        /s/ Mitchell S. Feller
                                        Mitchell S. Feller

SOBEL & FELLER LLP
444 Madison Avenue, 17th Fl
New York, NY 10022
tel: 212-308-0600 x 157
fax: 212-308-0611
msfeller@sobelfeller.com
www.sobelfeller.com