

SOBEL & FELLER LLP
444 Madison Avenue, 17th Fl
New York, NY 10022

tel:  212-308-0600
fax: 212-308-0611
www.sobelfeller.com

September 30, 2010

Jonathan M. Sobel
jmsobel@sobelfeller.com

**VIA ECF AND FEDERAL EXPRESS**

Magistrate E. Thomas Boyle
United States District Court, Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, New York 11722

> Re:   Medical Instruments Development, Inc. v. Cook Incorporated, et al.
>        Civil Action No. 09-1409 (JFB)(ETB)

Dear Judge Boyle:

We represent plaintiff Medical Instruments Development, Inc. ("MIDI") in the above-referenced action, and write pursuant to Local Rule 6.3 to request reconsideration of Your Honor's ruling on the record at the conference held on September 16, 2010, ordering that MIDI's sole employee, Dr. Harold Jacob, be precluded from access to documents designated as "highly confidential". (A copy of the pages of the transcript addressing that issue is attached as **Exhibit A** hereto. )

At the hearing, Your Honor ruled:

> "Out of an excess of caution, I'm going to modify the order for the reasons that have been raised relative to the overlap of technology, and I happen to agree with the last point that counsel made, and the point that Mr. Sobel made with regard to the offer that for a year he won't get into any competing business.  And to me that is some indication because certainly trade secrets do go much further, so it gives me reason for concern that he has some ideas to use this information at some future time."

(Exhibit A hereto, at 30.)

While making this ruling "out of an excess of caution", Your Honor also noted your strong concern that Dr. Jacob be able to meaningfully participate in his case.  (*Id.* at 17.)  Courts have recognized this right of parties to have access to information, and have applied a balancing test as a result.  *Infosint S.A. v. H. Lundbeck A.S.*, 2007 WL 1467784, at *3 (S.D.N.Y. May 16, 2007) (citation omitted).  Based on new information, MIDI submits that the balancing test falls well in favor of allowing Dr. Jacob access to all of Cook's documents for the reasons discussed below.

    A.   **Basis for this Motion**

The basis for this motion is that since the September 16, 2010 conference herein, MIDI has had its first opportunity to preliminarily review portions of the 30,000 pages of documents designated as highly confidential by Cook and produced just two weeks before the conference (and ten months after MIDI served its document requests).  Cook's documents confirm a number of things, each of which merits granting Dr. Jacob access to Cook's documents.

Judge E. Thomas Boyle
September 30, 2010
Page 2

1. **Cook has massively misused and misapplied the "highly confidential" designation**

Based on an initial review of Cook's 30,000 pages of documents designated as "highly confidential", it is clear that the bulk of these documents have been improperly designed as highly confidential. MIDI first learned this since the September 16 conference. After its review, MIDI asked Cook to agree to de-designate multiple categories of documents that Cook has produced as highly confidential. Cook's counsel stated that it will only discuss de-designation requests on a document-by-document basis (see **Exhibit B** hereto). This will create an unreasonable burden on MIDI. A review of representative types of documents shows that they clearly should not be designated as highly confidential, and pose no risk to Cook if Dr. Jacob has access to them. The categories of documents include (without limitation): (i) design and engineering drawings and schematics for the devices at issue (which devices are used by the public and so can be reversed engineered)[1], and similar types of technical documents; (ii) sales information, including the number of products sold, dollar value of sales, and profit margins, (iii) sales training manuals, (iv) presentations to doctors, (v) teaching materials, (vi) product comparison documents, (vii) product literature, (viii) field sales guides, and (ix) 510(k) filings (which are publicly available). Examples of such documents, some of which are excerpted due to their length, are attached as **Exhibits C-Q** hereto, and are submitted to Your Honor in camera.

Cook's misuse of the highly confidential designation creates an unfair prejudice to and burden on MIDI and Dr. Jacob. In view of the massive number of improperly designated documents, it appears that Cook intends to do just that by forcing MIDI to challenge the bulk of Cook's designations, when the alternative is allowing Dr. Jacob access to documents where the risk of competitive harm is essentially non-existent to Cook.

Given Cook's unwillingness to agree to de-designate these categories of documents, it seems inevitable that under the Court's current ruling MIDI will be forced to return to the Court for relief with respect to thousands of improperly designated documents. (Indeed, as the documents in Exhibits C-Q hereto reflect, MIDI already has to deal with tens of thousands of pages of totally improper redactions on the purported grounds of non-responsiveness.)

2. **Cook's documents demonstrate the lack of overlap between the Nanovibronix and Cook ERCP technology.**

Cook has made no factual showing that there is any overlap in the technology at issue in this case and the technology of NanoVibronix. To the contrary, Cook's documents further demonstrate the *lack* of overlap between the technology of Nanovibronix and the catheter technology at issue in this case. Nanovibronix is the company that Dr. Jacob is involved with that makes devices that use ultrasound to clean debris off of indwelling urinary catheters. As Dr. Jacob's affidavit explains, Nanovibronix does not design, make or sell catheters and Dr. Jacobs has no intention of being involved in designing, making, or selling catheters. They are two distinct areas of technology, without any overlap. The documents in this case, which deal with the features, design, and function of ERCP catheters – catheters used to do quick procedures in the gastrointestinal tract – have no use in the area of Nanovibronix's ultrasound technology. There is no overlap, and no risk of harm or competitive disadvantage to Cook. Cook's affiant stated in conclusory fashion that Cook's endoscopy unit overlaps with its urinary unit. But there has been *no showing* of any overlap of products – only mere *ipse dixit* by Cook.

---

[1]   MIDI has offered to treat design features that cannot be determined by reverse engineering, such as manufacturing tolerances, as highly confidential.

    **B.**    **An Alternative "Excess of Caution" Protective Measure**

To be absolutely clear, as stated in Dr. Jacob's affidavit, *Dr. Jacob has no involvement with commercial activity relating to Cook's ERCP (endoscopic) products at issue and will not compete with Cook in the future*. However, as a belt-and-suspenders approach, Dr. Jacob has proposed that he be bound by the *same* non-compete and confidentiality obligations that Cook applies to the thousands of its employees who have access to Cook's purportedly "highly confidential" information produced by Cook in this litigation. To this end, MIDI has requested since the September 16 conference that Cook provide copies of the confidentiality restrictions it applies to Cook's current employees who have access to the most highly confidential of Cook's information. *See, e.g., Northrop v. Inventive Comm'ns, L.L.C.,* 199 F.R.D. 334, 335-36 (D. Neb. 2000) (holding that licensor plaintiff would be allowed to examine source code for software provided he sign a confidentiality order and agree not to compete for the pendency of the lawsuit and for one year thereafter). This would show the *true* measure of protection that Cook believes is necessary with respect to "highly confidential" information to which thousands of its past, present, and future employees have or have had access. Cook has declined MIDI's request, challenging the relevance of this information. (Exhibit B hereto).

Cook argued at the September 16 conference that the information at issue is "trade secret" information that has a valuable life extending for many years. (Exhibit A, at 29.) The documents produced by Cook show that that is simply *not* the case. The attached Exhibits C-Q are examples reflecting the non-trade secret nature of the information at issue. Moreover, there is no risk of harm even if they *were* trade secrets, as Dr. Jacob is *not* in the catheter business (notwithstanding Cook's empty assertions to the contrary), and never has been.

    **C.**    **Conclusion**

MIDI respectfully submits that precluding Dr. Jacob from seeing Cook's documents "out of an excess of caution" puts an unreasonable burden and unreasonable prejudice on MIDI. Given the clear misuse to which Cook has already made of the "highly confidential" designation and lack of any factual showing that there is any overlap in the technology at issue in this case and the technology of NanoVibronix, MIDI respectfully requests that the Court reverse its September 16 ruling with respect to the Stipulated Protective Order, and decline to modify the Stipulated Protective Order that is in place, and allow Dr. Jacob access to Cook's documents, or at a minimum, access to the categories of documents listed above in section A.1 hereof.

In the alternative, MIDI requests (a) that the Court order Cook to specify the restrictions it applies to its own employees who have access to the "highly confidential" information at issue so that Dr. Jacob can adopt the same restrictions and thereby obviate Cook's concerns, or (b) that the Court conduct a brief evidentiary hearing so that Dr. Jacob may be questioned, and Cook's witness may be questioned, to resolve what Your Honor recognized as a "pretty big factual dispute here" regarding the lack of overlap in technology. (Exhibit A, at 27.)

Respectfully submitted,

Jonathan M. Sobel
cc:        James R. Ferguson, Mayer Brown LLP (via email and ECF)
             Bernard Malina, Malina & Associates, PLLC (via email and ECF)