

SOBEL & FELLER LLP
444 Madison Avenue, 17th Fl
New York, NY 10022

tel: 212-308-0600
fax: 212-308-0611
www.sobelfeller.com

January 18, 2011

Jonathan M. Sobel
jmsobel@sobelfeller.com

**VIA ECF AND FEDERAL EXPRESS**

Magistrate E. Thomas Boyle
United States District Court, Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, New York 11722

      Re:    **Medical Instruments Development, Inc. v. Cook Incorporated, et al.
Civil Action No. 09-1409 (JFB)(ETB)**

Dear Judge Boyle:

      We represent plaintiff Medical Instruments Development, Inc. ("MIDI") in the above-referenced action. Pursuant to Fed. R. Civ. P. 37 (a), we write to respectfully request that the Court order defendants ("Cook") to supplement their privilege log to identify each of the privilege log entries that discuss or analyze: (i) any of the patents-in-suit; (ii) the interference proceeding with Boston Scientific regarding one or more of the patents-in-suit; (iii) the litigation between Kimberly-Clark and Boston Scientific concerning one or more of the patents-in-suit; and/or (iv) the litigation between Dr. Jacob and Kimberly-Clark concerning Dr. Jacob's ownership rights in the patents-in-suit. Cook's privilege log fails to identify which of the entries involve discussion or analysis of the asserted patents, or of the prior (public) proceedings concerning the patents. (A copy of Cook's privilege log is attached as Exhibit A hereto. A copy of the parties' correspondence attempting to resolve this dispute is attached as Exhibits B-E hereto.)

      An important issue in this case is the extent to which Cook was aware of MIDI's patents-in-suit, and other publicly-available information regarding prior litigations and proceedings concerning these patent. This critical information is directly relevant to two important issues. First, it bears on Cooks' willful infringement, as it reveals the timing and extent of Cook's knowledge of MIDI's patents. Second, it bears directly on Cook's laches defense in this case, as Cook's awareness of factors such as prior patent office proceedings concerning the patents in suit, and litigation to secure the return of Dr. Jacob's ownership interests in the patents-in-suit from a third-party, justify any alleged delay.

      1.    **MIDI is Entitled To An Identification in Cook's Privilege Log
Entries of Which Documents Discuss or Analyze the Patents-in-Suit**

      Cook's Privilege Log in its present form fails to indicate which of the 255 entries on the log discuss or analyze the patents-in-suit, and therefore fails to comply with Federal Rule of Civil Procedure 26(b)(5), and/or fails to provide non-privileged information that bears on Cook's laches defense. While dozens of descriptions on Cook's log include "patent issues", it remains unclear as to whether or not those patent issues involve the patents-in-suit.

While case law on this issue is limited, MIDI is aware of no case law that supports Cook's refusal to provide this information, and at least one case that squarely supports the requirement that this information be disclosed. Specifically, in *Carl Zeiss Vision Int'l GMBH v. Signet Armorlite, Inc.*, Civ. No. 07-cv-0894-DMS (POR), 2009 WL 4642388, at * 2 (S.D. Cal. Dec. 1, 2009), the Court found privilege log entries "vague" and deficient where they identified a *group* of patents that included *more than* the accused patents. The Court noted and held:

> Zeiss's identification of the clearance opinions in its privilege log is vague. Zeiss's Fourth Supplemental Privilege Log, served May 15, 2009, contains multiple listings that identify Samuel Miller as "Author" and describe the Subject Matter as "Document [or Email] including confidential client information reflecting legal advice of counsel re: Group I [or II] patents." (JDCS, Ex. C.) However, "Group I" represents numerous patents in addition to the '713 and '470 patents at issue in this case. Furthermore, the privilege logs fail to identify Samuel Miller as Sola's outside I.P. counsel. These vague listings prevent an effective identification of the clearance opinions. For example, even though Zeiss's Rule 30(b) (6) witness testified from memory to the author, recipient, and timing of the clearance opinions, the witness was unable to locate an entry for the clearance opinions anywhere in Zeiss's privilege logs. Thus, the privilege logs fail to identify the clearance opinions with "sufficient particularity."

*Id.* (emphasis added).

Cook's entries similarly fail to identify which entries specifically involve analysis or discussion of any patent-in-suit. Privilege log entries that pre-date any of Cook's alleged infringing sales would support MIDI's claim of willful infringement. Additionally, log entries may involve documents that discuss prior proceedings concerning the patent-in-suit, and Cook's knowledge of these prior proceedings is directly relevant to Cook's laches defense. It is well-settled that laches is an equitable remedy considered on a case-by-case basis, and that a patentee may justify any "delay" in filing suit on a number of grounds, including, without limitation, other litigation or proceedings concerning the asserted patents, and any dispute over ownership of the patents. *See A.C. Aukerman Co. v. R.I. Chaides Constr. Co.*, 960 F.2d 1020, 1032-33 (Fed. Cir. 1992) (*en banc*). Cook's knowledge of the existence of these prior proceedings not only justifies any alleged "delay" in bringing suit against Cook, but refutes any alleged prejudice to Cook from such alleged delay, by showing Cook's awareness of them.

2. **Cook's Case "Authority" and Cook's Actions Support MIDI's Motion**

Cook, citing to *In re Spalding Worldwide, Inc.*, 203 F.3d 800 (Fed Cir. 2000) (without referring to any proposition or portion of that decision) contends that disclosing the fact of whether a document discusses or analyzes one or more of the patents-in-suit would "necessarily reveal matters relating to the substance of attorney-client communications." (See Exhibit C hereto.) However, *In re Spalding* actually *supports* MIDI's position that it is appropriate to identify the patent that is the subject of the privileged document. The issue addressed in *In re Spalding* was whether an invention disclosure document (a document submitted to a patent attorney for the purposes of potentially seeking patent protection on an invention) was privileged or not. Laced through the Federal Circuit's opinion is an identification of the *precise patent number* of the patent that was at issue in the invention disclosure document. *In re Spalding*, 203 F.3d at 802, 805.

Judge E. Thomas Boyle  Page 3
January 18, 2011

    Further, Cook's own prior disclosures are inconsistent with the position it now takes. Cook contemporaneously served with its privilege log Cook's Amended Response to MIDI's Interrogatory 8, which interrogatory seeks information concerning Cook's first awareness of the asserted patents. Cook's Amended Response discloses, *inter alia*, that "information concerning the subject matter of this Interrogatory is contained in an attorney-client privileged communication that Kern Hawkins, Greg Skerven and Richard J. Godlewski received from C. David Emhardt, Esq. on or about May 20, 1999. (6 weeks after commencement of this lawsuit). (*See* Exhibit A, Cook Privilege Log, Entry No. 159)." Cook's disclosure of a specific privileged document that discusses one or more of the asserted patents demonstrates the fallacy of Cook's position that such disclosure would, improperly, "necessarily reveal matters relating to the substance of attorney-client communications."

    MIDI is entitled to know the points in time prior to commencement of the lawsuit when Cook discussed one or more of the patents-in-suit, or proceedings relating to them, and not simply the single entry that Cook is willing to identify in its response to Interrogatory No. 8.

    As Cook is aware, among the evidence that there was no delay in suing Cook, much less an unreasonable delay, are that (i) patent infringement litigation was proceeding against Boston Scientific, (ii) interference proceedings against Boston Scientific followed next, (iii) thereafter Dr. Jacob (MIDI) was fighting for a number of years with Kimberly-Clark to secure the return of his ownership interest in the patents, and (iv) Dr. Jacob was ultimately forced to sue Kimberly-Clark to retrieve those interests. Promptly after securing those ownership rights in his patents, Dr. Jacob sued Cook.

    While these events, standing alone, serve to defeat laches, Cook's knowledge of any or all of the above events at the time Cook commenced its infringing acts, or at the time Cook was considering making the products that are accused of infringing, impacts the equities of a laches defense. Cook's awareness of the patents is also relevant to MIDI's claim for willful infringement. Accordingly, MIDI respectfully requests that the Court order Cook to identify each of the privilege log entries that discuss or analyze: (i) any of the patents-in-suit; (ii) the interference proceeding with Boston Scientific regarding one or more of the patents-in-suit; (iii) the litigation between Kimberly-Clark and Boston Scientific concerning one or more of the patents-in-suit; and/or (iv) the correspondence and litigation between Dr. Jacob and Kimberly-Clark concerning Dr. Jacob's ownership rights in the patents-in-suit.

    MIDI further respectfully requests that the Court order Cook to comply with items 2, 3 and 4 of Exhibits B and D hereto, concerning further deficiencies in Cook's privilege log. Cook has agreed provide an updated log addressing these issues, but has not yet fulfilled its assurance.

                                                        Respectfully submitted,

                                                        Jonathan M. Sobel

cc:    James R. Ferguson (via email and ECF);
        Bernard Malina, Esq.